**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

**Civil Action No. 5:20-CV-00425-FL**

| | |
|---|---|
| **CHIP FUTRELL,** | |
| **Plaintiff,** | |
| **v.** | **DEFENDANT'S ANSWER AND DEFENSES TO AMENDED COMPLAINT** |
| **NORTH CAROLINA STATE UNIVERSITY, a Constituent Institution of University of North Carolina,** | |
| **Defendant.** | |

NOW COMES Defendant, North Carolina State University ("NC State" or "Defendant") by and through undersigned counsel, and respectfully files its responsive pleading to Plaintiff's Amended Complaint. Defendant responds to the Amended Complaint as follows:

**FIRST DEFENSE-ANSWER**

1.     Plaintiff Chip Futrell (hereinafter "Plaintiff") is, and at all times relevant to this action was, a citizen and resident of Wilson County, North Carolina.

**RESPONSE**:  Upon information and belief, it is admitted that Plaintiff is a citizen and resident of Wilson County, North Carolina.

2.     Defendant North Carolina State University (hereinafter "Defendant") is a constituent institution of the University of North Carolina that is organized and exists pursuant to North Carolina General Statute (hereinafter "N.C.G.S.") § 116-1, *et seq.*

**RESPONSE:**  It is admitted that NC State is a public university, a body politic, and a

constituent institution of The University of North Carolina pursuant to N.C. Gen. Stat. § 116-3. The remaining allegations of Paragraph 2 are legal conclusions, to which no response is required, but if one is, the remaining allegations of Paragraph 2 are denied.

3.     The action complained of by Plaintiff occurred within Wake County, North Carolina, where Defendant is located.

**RESPONSE:** It is admitted that NC State's main campus is located in Wake County, North Carolina. The remaining allegations of Paragraph 3 are legal conclusions, to which no response is required, but if one is, the remaining allegations of Paragraph 3 are denied.

4.     On July 13, 2020, Plaintiff filed a Complaint in Wake County Superior Court.

**RESPONSE:** Admitted.

5.     On August 6, 2020, Defendant filed a notice of removal to this court.

**RESPONSE:** Admitted.

6.     This court has subject matter jurisdiction over this action pursuant to 42 U.S.C. 2000e-5(f)(3).

**RESPONSE:** The allegations of Paragraph 6 are legal conclusions, to which no response is required.

7.     On September 11, 2020, Defendant filed a motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**RESPONSE:** Admitted.

## FACTS

8.     Plaintiff is a fifty-one-year old gay male.

**RESPONSE:** It is admitted that Defendant's Human Resources Information Management (HRIM) System lists Plaintiff's birthdate as February 28, 1969. It is admitted that Plaintiff has indicated on a personal information form contained in his confidential personnel file that he is

married, and the listed name for his spouse appears to be male. However, Defendant lacks sufficient knowledge and information to admit or deny that Plaintiff is gay. To the extent any further response is required, such allegations are denied.

9.     In May 1991, Plaintiff received a Bachelor of Science in Recreation Resources Administration from Defendant.  In December 1993, Plaintiff received a master's degree in Parks, Recreation and Tourism Management/Public Administration from Defendant.

**RESPONSE:** Admitted.

10.     Plaintiff worked for Defendant as a graduate assistant from September 1991 until May 1993 while pursuing a master's degree from Defendant.

**RESPONSE:** Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 10.  To the extent any further response is required, such allegations are denied.

11.     Plaintiff worked for Defendant as a Continuing Education Specialist from June 1993 until March 1994.

**RESPONSE:**  It is admitted that from June 1993 through March 1994 Plaintiff worked as a temporary employee in the position of Continuing Education Specialist.  To the extent any further response is required, such allegations are denied.

12.     From December 1994 until August 1997, Plaintiff was employed by the North Carolina Secretary of State.  During that time, he worked as a Corporate Information Specialist, a Document Examiner and a Lobby Registrar.

**RESPONSE:**  Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 12.  To the extent any further response is required, such allegations are denied.

13.     Plaintiff returned to work for Defendant in August 1997 as a Program Assistant for the Vice Provost of the Supervisors' Management School.

**RESPONSE:**  It is admitted that Plaintiff worked as an Office Assistant IV for the Division of Continuing Studies in the Institute for Environmental Technology Education (IETE) for the Vice Provost for Continuing Studies beginning in August 1997. To the extent any further response is required, such allegations are denied.

14.     From December 1997 until June 1999, Plaintiff was employed by Defendant as the Coordinator for Educational Travel and General Interests Studies.  In such capacity, he developed, organized and coordinated continuing education courses.

**RESPONSE:**  It is admitted that from December 5, 1997 through January 1, 1999 Plaintiff was employed by Defendant as the Interim Coordinator of Educational Travel and Special Programs and that he developed, organized, and coordinated continuing education courses.  To the extent any further response is required to the allegations contained in Paragraph 14, such allegations are denied.

15.     Plaintiff was employed by Defendant as a Continuing Education Specialist in the Office of Professional Development from July 1999 until October 2020.  In such capacity, he developed, organized, coordinated, marketed and conducted continuing education seminars and conferences throughout the United States.

 **RESPONSE:**  It is admitted that Plaintiff was employed by Defendant as a Continuing Education Specialist in the Office of Continuing and Professional Education department from July 1, 1999 through October 31, 2000.  Defendant further admits that he organized and coordinated continuing education seminars for Defendant at the McKimmon Center for Extension and Continuing Education.  To the extent any further response is required to the allegations contained in Paragraph 15, such allegations are denied.

4

16.     From November 2000 until April 2002, Petitioner worked for Defendant as a Direct Marketing Specialist in the Office of Professional Development.  In such capacity, he was responsible for marketing all non-credit courses offered by the Office of Professional Development.

**RESPONSE:**  It is admitted that from November 1, 2000 through June 30, 2001 Plaintiff worked for Defendant as an Interim Direct Marketing Specialist position in the McKimmon Center for Extension and Continuing Education.   It is further admitted that from July 1, 2001 through April 30, 2002, Plaintiff served as Direct Marketing Specialist in the McKimmon Center for Extension and Continuing Education.  To the extent any further response is required to the allegations contained in Paragraph 16, such allegations are denied.

17.     In May 2002, Plaintiff was promoted to the position of Assistant Director and Direct Marketing Specialist in the Office of Professional Development.  In such capacity, he supervised fourteen employees and sold marketing and coordinating services to outside clients. He also ensured that the unit stayed within budget.  Plaintiff held this position until June 2006.

**RESPONSE:**  It is admitted that on May 1, 2002, Plaintiff was promoted into an Assistant Director/Specialist position within the McKimmon Center for Extension and Continuing Education and that he held the position until June 30, 2005.  Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 17.  To the extent any further response is required, such allegations are denied.

18.     In July 2006, Plaintiff was promoted to an Associate Director for Continuing and Professional Education. His job responsibilities included management of the Office of Professional Development and the Computer Training Unit.  Plaintiff was also responsible for managing a four-million-dollar budget, monitoring the performance of twenty employees and overseeing more than five hundred seminars and conferences.

5

**RESPONSE:** It is admitted that Plaintiff was promoted to Associate Director for Continuing and Professional Education in the Office of Professional Development; however, the promotion occurred on July 1, 2005, not in July 2006 as Plaintiff has alleged. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 18. To the extent any further response is required, such allegations are denied.

19. Plaintiff was promoted to the Director for Continuing and Professional Education in April 2013. He was thereafter responsible for the following six non-credit units: Office of Professional Development, Technology Training Solutions, the McKimmon Conferences and Training Center, Marketing Services, McKimmon Print Services and Customized Contractual Education. Plaintiff was also responsible for a seven-million-dollar budget, thirty-five permanent employees and fifty temporary employees.

**RESPONSE:** It is admitted that Plaintiff was promoted to the Director for Continuing and Professional Education in the McKimmon Center for Extension and Continuing Education; however, Plaintiff was promoted on January 20, 2015, not in April 2013 as Plaintiff has alleged. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 19. To the extent any further response is required, such allegations are denied.

20. During the time that Plaintiff served as the Director for Continuing and Professional Education, he created the first comprehensive maintenance plan for any building on Defendant's campus.

**RESPONSE:** Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 20. To the extent any further response is required, such allegations are denied.

21.     On October 1, 2018, Plaintiff was named the Interim Vice Provost of Continuing Education following the retirement of the then Vice Provost of Continuing Education.

**RESPONSE:** Admitted.

22.     As the Interim Vice Provost of Continuing Education, Plaintiff was responsible for leadership of the McKimmon Center for Extension and Continuing Education division. He oversaw a budget of forty-three-million dollars and was ultimately responsible for more than 200 employees.

**RESPONSE:** It is admitted that Plaintiff was responsible for leadership of the McKimmon Center for Extension and Continuing Education while serving as the Interim Vice Provost for Continuing Education. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 22. To the extent any further response is required, such allegations are denied.

23.     After being named the Interim Vice Provost of Continuing Education, Plaintiff successfully fulfilled the duties and responsibilities of both the Interim Provost and Continuing Education position and the Director of Continuing and Professional Education position.

**RESPONSE:** It is admitted that when Plaintiff served as the Interim Vice Provost for Continuing Education, he performed the then duties and responsibilities of that role in a satisfactory manner. It is further admitted that Plaintiff continued to perform many of the duties and responsibilities of the Director of Continuing and Professional Education position. In further answer, the position description for the position of Vice Provost for Continuing Education had been re-written by the hiring authority, Dr. Thomas Miller, Senior Vice Provost for Academic Outreach and Entrepreneurship, prior to it being posted, and the duties and responsibilities of the position had been greatly expanded and enhanced, such that it was a different position from that

7

which Plaintiff had served in an interim capacity. Except as expressly admitted, the allegations of Paragraph 23 are denied.

24.     As the Interim Vice Provost of Continuing Education, Plaintiff reported directly to Dr. Thomas Miller, Defendant's Senior Vice Provost for Academic Outreach and Entrepreneurship. Dr. Miller later congratulated Plaintiff for successfully performing the duties of two separate positions.

**RESPONSE:** It is admitted that as the Interim Vice Provost for Continuing Education, Plaintiff reported directly to Dr. Thomas Miller, Defendant's Senior Vice Provost for Academic Outreach and Entrepreneurship and that Dr. Miller indicated that Plaintiff's work performance in the role had been satisfactory. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 24. To the extent any further response is required, such allegations are denied.

25.     Defendant advertised the Vice Provost of Continuing Education position in January 2019. Plaintiff applied for said position on or about February 25, 2019. At the time Plaintiff applied for said position, he met all of the minimum qualifications and all but one of the preferred qualifications for the position. Specifically, Plaintiff did not have a doctoral degree at the time of his application.

**RESPONSE:** It is admitted that Defendant advertised the Vice Provost for Continuing Education position in January 2019. It is further admitted that Plaintiff met the minimum education and experience for the position as listed on the job description. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 25. To the extent any further response is required, such allegations are denied.

26.     Nine individuals were selected to serve on the search committee for the Vice Provost of Continuing Education position. At least five of the nine members of the search

8

committee knew Plaintiff's sexual orientation. At least one of the nine members discussed Plaintiff's sexual orientation with Dr. Miller. As such, Dr. Miller was aware of Plaintiff's sexual orientation. To the extent any further response is required, such allegations are denied.

**RESPONSE:** It is admitted that nine individuals were selected to serve on the search committee for the Vice Provost for Continuing Education position. It is denied that Plaintiff's sexual orientation was discussed during the search committee meetings and interview process, or that Dr. Miller had actual knowledge of Plaintiff's sexual orientation prior to the filing of Plaintiff's EEOC charge. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 26. To the extent any further response is required, such allegations are denied.

27. On March 28, 2019, Plaintiff was notified that he had been selected for a first-round video conference interview. Defendant's search committee would not have selected Plaintiff for a first-round interview if Plaintiff did not possess the minimum qualifications for the position.

**RESPONSE:** It is admitted that on March 28, 2019, Plaintiff was notified that he had been selected for a first-round video conference interview. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in Paragraph 27. To the extent any further response is required, such allegations are denied.

28. Plaintiff interviewed for the position on April 11, 2019. On the following day, Leslie Boney, the search committee chairperson, told Plaintiff that he had "killed it" during his interview. Plaintiff reasonably interpreted Boney's comments to mean that he had done very well during his interview.

**RESPONSE:** It is admitted that Plaintiff participated in a WebEx first-round interview for the position on April 11, 2019 and that Leslie Boney, the chair of the search committee,

indicated to Plaintiff that he (Boney) thought Plaintiff had "killed it" during the interview. In further answer, Plaintiff's interview was one of the first to be conducted, and at the time Boney made the comment to Plaintiff, he had not yet interviewed all of the first-round candidates. Defendant is without sufficient knowledge and information to admit or deny how Plaintiff interpreted Boney's comment. Except as expressly admitted, the allegations of Paragraph 28 are denied.

29.     On April 24, 2019, Defendant announced that three finalists had been selected for the Vice Provost of Continuing Education position. Those finalists were Mark Bernhard, James Shaeffer and Chris LaBelle. Plaintiff was not chosen as one of the three finalists.

**RESPONSE:** Admitted.

30.     All three of the finalists spoke in open sessions during the interview process. All three mentioned their wives and children during those sessions. None of the three finalists were gay males.

**RESPONSE:** It is admitted that each finalist was invited to participate in an "open session" during the interview process. Defendant is without sufficient knowledge and information to admit or deny that all of the finalists mentioned their wives and children during those sessions or to admit or deny that none of the three finalists was a gay male. In further answer, Defendant notes that the question whether a person has a wife and/or children is irrelevant to the question whether he is a gay male. Any person, including a gay male, could have a spouse whom he describes as his "wife." As an example, a gay male whose spouse is transgender or gender non-binary might describe his spouse as his "wife." In addition, a person who has a spouse of the same sex can have children by adoption or through the use of assistive reproductive technology, such as surrogacy or in-vitro fertilization. Accordingly, except as expressly admitted, the allegations of Paragraph 30 are denied.

31.     After learning that he had not been chosen as a finalist for the position, Plaintiff asked Leslie Boney, a member of the interview committee, if Plaintiff's lack of a doctoral degree was a factor in Plaintiff's non-selection.  Boney told Plaintiff the lack of a doctoral degree was not a factor.

**RESPONSE:**  Defendant is without sufficient knowledge and information to admit or deny the timing or content of a conversation between Plaintiff and Mr. Leslie Boney relating to Plaintiff's lack of a doctoral degree.  The allegations of Paragraph 31 therefore are denied.

32.     Dr. Miller ultimately decided which of the three finalists would be selected for the Vice Provost of Continuing Education position.

**RESPONSE:**  Admitted.

33.     On April 25, 2019, Plaintiff requested a copy of the interview notes that the committee members had made following his interview.  Defendant provided Plaintiff with a copy of the requested interview notes on May 15, 2019.  The notes made by one unidentified interview committee member referred to Plaintiff as a "plugger."

**RESPONSE:**  It is admitted that on or about April 26, 2019, Plaintiff made a records request for his application materials for the position of Vice Provost for Continuing Education, including a copy of the notes from his WebEx first-round interview, and that Defendant provided those documents to Plaintiff on May 15, 2019.  It is further admitted that the handwritten notes made by one unidentified interview committee member from Plaintiff's screening interview included the following:  "He's a partner.  Not esp. creative.  A plugger."  Except as expressly admitted, the allegations of Paragraph 33 are denied.

34.     "Plugger" is a term that is often used to refer to a gay man who has anal sex with another man.  The Urban Dictionary defines plugger as "a man who enjoys anal sex with another

man on a regular basis." Plaintiff and a member of other employees at Defendant's McKimmon Center consider "plugger" to be a derogatory term when used in reference to gay males.

**RESPONSE:** Defendant is without sufficient knowledge and information to admit or deny the allegations of Paragraph 34 of Amended Complaint. To the extent any further response is required, such allegations are denied. In further answer, Defendant submits that the Urban Dictionary contains many different definitions for the word "plugger." Defendant further submits that the definitions of the word "plugger" found in established and accepted dictionary sources are very different from the Urban Dictionary definition alleged in Paragraph 34. As an example, the definition of "plugger" in the Oxford English Dictionary does not include any references to a person's sexual orientation or activities. It does, however, include the following definition: "A person who or animal which perseveres steadily and laboriously with a journey or task."

35.     On May 22, 2019, Plaintiff learned that Mark Bernhard, a heterosexual male, had accepted the Vice Provost for Continuing Education position. Bernhard began employment with Defendant on or about June 26, 2019. Plaintiff returned to his former position as the Director for Continuing and Professional Education at that same time.

**RESPONSE:** Defendant is without sufficient knowledge and information to admit or deny that Plaintiff learned on May 22, 2019 that Mark Bernhard had accepted an offer for the position of Vice Provost for Continuing Education. It is admitted that on May 29, 2019, Defendant made a public announcement that Bernhard had been selected for the position. It is admitted that Bernhard began employment with Defendant on August 26, 2019 (not June 26, 2019, as alleged by Plaintiff) and that Plaintiff returned to his former position as the Director for Continuing and Professional Education on that date. Defendant is without sufficient knowledge and information to admit or deny that Bernhard is a heterosexual male. Except as expressly admitted, the allegations of Paragraph 35 are denied.

36.　　　On June 26, 2019, Dr. Miller gave Plaintiff a written evaluation of Plaintiff's performance as Interim Vice Provost. Dr. Miller rated Plaintiff's performance as exceeding expectations. Defendant defines "exceeding expectations" as follows: "routinely performs above expected performance of assigned duties and is generally considered among the highest performing employees within the work unit."

**RESPONSE:** Admitted.

37.　　　Since Bernhard began working in the Vice Provost of Continuing Education position, he has relied on Petitioner's experience and expertise in performing the duties of Bernhard's position.

**RESPONSE:** Defendant denies that Bernhard "has relied on Petitioner's [sic] experience and expertise in performing the duties of Bernhard's position." Except as expressly admitted, the allegations of Paragraph 37 are denied.

38.　　　Plaintiff was more qualified for the Vice Provost of Continuing Education position than Mark Bernhard. Plaintiff had more experience in continuing education positions than Bernhard. In addition, Plaintiff had a vastly superior understanding of Defendant's role in the state and region than Bernhard. Plaintiff received both his undergraduate and graduate degrees from Defendant. Plaintiff had worked for Defendant for almost twenty-eight years at the time Bernhard was selected for the position. In contrast, Bernhard had never worked for Defendant. Furthermore, Plaintiff has spent years cultivating relationships within the McKimmon Center staff, the university community, the state and region. Bernhard has no such connections. Finally, Plaintiff had actually performed the duties of the Vice Provost of Continuing Education while serving as the Interim Vice Provost.

**RESPONSE:** It is denied that Plaintiff was more qualified for the Vice Provost for Continuing Education position than Mark Bernhard. It is admitted that Plaintiff received his

undergraduate and graduate degrees from NC State and had worked for NC State for more than 25 years. It is denied that Plaintiff had a "vastly superior understanding" of NC State's role in the state and region than Bernhard. It is admitted that the job posting speaks for itself. It is further admitted that prior experience working for NC State was not a qualification for the Vice Provost position, nor experience overseeing a conference center, in North Carolina, or the region. It is admitted that Plaintiff satisfactorily performed the duties of the Interim Vice Provost position, as that position was described at the time; however, it is denied that Plaintiff had performed the duties of the revised and expanded Vice Provost for Continuing Education position for which he applied and for which Bernhard was hired. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations of Paragraph 38. Except as expressly admitted, the allegations of Paragraph 38 are denied.

39.     Plaintiff was more qualified for the Vice Provost of Continuing Education position than finalist Chris LaBelle. At the time of his interview, LaBelle had eight years of experience in managing and directing continuing education programs. Plaintiff had more than twenty-one years of experience in managing and directing continuing education programs. In addition, Plaintiff had a vastly superior understanding of Defendant's role in the state and region than LaBelle. Plaintiff received both his undergraduate and graduate degrees from Defendant. Plaintiff had worked for Defendant for almost twenty-eight years at the time LaBelle was selected as an interview finalist. In contrast, LaBelle had never worked for Defendant. Furthermore, Plaintiff has spent years cultivating relationships within the McKimmon Center staff, the university community, the state and region. LaBelle has no such connections. Finally, Plaintiff had actually performed the duties of the Vice Provost of Continuing Education while serving as the Interim Vice Provost.

**RESPONSE:** It is denied that Plaintiff was more qualified for the Vice Provost for Continuing Education position than Chris Labelle. It is admitted that Plaintiff received his

undergraduate and graduate degrees from NC State and had worked for NC State for more than 25 years. It is denied that Plaintiff had a "vastly superior understanding" of NC State's role in the state and region than LaBelle. It is admitted that the job posting speaks for itself. It is further admitted that prior experience working for NC State was not a qualification for the Vice Provost position, nor experience overseeing a conference center, in North Carolina, or the region. It is admitted that Plaintiff satisfactorily performed the duties of the Interim Vice Provost position, as that position was described at the time; however, it is denied that Plaintiff had performed the duties of the revised and expanded Vice Provost position for which he applied and for which LaBelle was selected as a finalist. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations of Paragraph 39. Except as expressly admitted, the allegations of Paragraph 39 are denied.

40. Plaintiff was more qualified for the Vice Provost of Continuing Education position than finalist Jim Shaeffer. Plaintiff had a vastly superior understanding of Defendant's role in the state and region than Schaeffer. Plaintiff received both his undergraduate and graduate degrees from Defendant. Plaintiff had worked for Defendant for almost twenty-eight years at the time Schaeffer was selected as an interview finalist. In contrast, Shaeffer had never worked for Defendant. Furthermore, Plaintiff has spent years cultivating relationships within the McKimmon Center staff, the university community, the state and region. Shaeffer has no such connections. Finally, Plaintiff had actually performed the duties of the Vice Provost of Continuing Education while serving as the Interim Vice Provost.

**RESPONSE:** It is denied that Plaintiff was more qualified for the Vice Provost for Continuing Education position than Jim Schaeffer. It is admitted that Plaintiff received his undergraduate and graduate degrees from NC State and had worked for NC State for approximately 25 years. It is denied that Plaintiff had a "vastly superior understanding" of NC State's role in the

state and region than Shaeffer.    It is admitted that the job posting speaks for itself.  It is further admitted that prior experience working for NC State was not a qualification for the Vice Provost position, nor experience overseeing a conference center, in North Carolina, or the region.  It is admitted that Plaintiff satisfactorily performed the duties of the Interim Vice Provost position, as that position was described at the time; however, it is denied that Plaintiff had performed the duties of the revised and expanded Vice Provost position for which he applied and for which Schaeffer was selected as a finalist.  Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations of Paragraph 40.  Except as expressly admitted, the allegations of Paragraph 40 are denied.

41.    None of the three aforementioned finalists for the Vice Provost position had experience managing a conference center such as the McKimmon Conference and Training Center. Plaintiff has more than six years of experience managing a conference center.

**RESPONSE:**  It is admitted that Plaintiff had experience managing a conference center. Defendant lacks sufficient knowledge and information to admit or deny whether the three finalists for the Vice Provost position had experience managing a conference center such as the McKimmon Conference and Training Center.  In further answer, prior experience managing a conference center was not a qualification for the Vice Provost for Continuing Education position, and prior to the launch of the search for the Vice Provost position in Spring 2019, the job description was reconstituted based on the Office of the Provost's needs and the future vision of the position for the University. The Vice Provost position was to include a broader range of duties and responsibilities beyond merely overseeing the operations of the McKimmon Center, which is why a national search was conducted for the position.   The job description reflected a greater coordination and strategic direction for continuing education across the whole University. This was a significant change because in the past the position had been limited to supervising the

programs and other activities in the McKimmon Center, whereas the updated position description was intended to encompass a higher depth and breadth of duties relating to extension and continuing education. A true and accurate copy of the job prospectus is attached as Exhibit A. Except as expressly admitted, the allegations of Paragraph 41 are denied.

42. Prior to Mark Bernhard's selection for the Vice Provost position, all previous Vice Provosts had experience managing the McKimmon Conference and Training Center or a similar facility prior to becoming Vice Provost.

**RESPONSE:** It is admitted that the former Vice Provost for Continuing Education, Alice Warren, who held the position prior to Mark Bernhard, had experience managing the McKimmon Center. Defendant lacks sufficient knowledge and information to admit or deny whether all previous Vice Provosts had experience managing the McKimmon Center. In further answer, prior experience managing a conference center was not a qualification for the Vice Provost for Continuing Education position. Except as expressly admitted, the allegations of Paragraph 42 are denied.

## JURISDICTIONAL ALLEGATIONS

43. On May 16, 2019, Plaintiff requested a formal investigation by Defendant's Office of Institutional Equity and Diversity (OIED). In said request, Plaintiff asserted that he had not been promoted to the Vice Provost of Continuing Education position because of his sexual orientation.

**RESPONSE:** Admitted.

44. The OIED issued an investigative summary on August 7, 2019. Said summary found that no policy violation had occurred. Said summary, however, failed to identify the interview committee member was referred to Plaintiff as a plugger. Upon information and belief,

OIED made no effort to determine the author of the plugger comment nor did OIED attempt to learn what the author meant by such comment.

      **RESPONSE:** Admitted. It is further admitted that the committee member who included the phrase "A plugger" (among several others) in his or her notes from Plaintiff's WebEx interview on April 11, 2019, was not identified in the investigative summary because the investigator determined that there were legitimate, non-discriminatory reasons as to why Plaintiff was not selected for the position. Therefore, the investigator found that neither the individual's identity nor the meaning of "plugger" was relevant in determining whether a violation of NC State's Equal Opportunity, Non-Discrimination and Affirmative Action Policy had occurred. Except as expressly admitted, the allegations of Paragraph 44 are denied.

      45.    OIED failed to conduct a full and fair investigation concerning Plaintiff's failure to be promoted to the Vice Provost for Continuing Education position.

      **RESPONSE:** Denied.

      46.    On September 20, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In such charge, Plaintiff asserted that Defendant failed to promote Plaintiff to the Vice Provost of Continuing Education position because of his sexual orientation.

      **RESPONSE:** Admitted.

      47.    On January 16, 2019, the EEOC issued Plaintiff a right to sue letter.

**RESPONSE:** Admitted. In further answer, the EEOC's Dismissal and Notice of Rights indicated that its investigation was "unable to conclude that the information obtained established a violation of [Title VII of the Civil Rights Act of 1964]."

      48.    Plaintiff has exhausted all applicable administrative remedies.

**RESPONSE:** The allegations of Paragraph 48 are legal conclusions, to which no response is required, but if one is, the allegations of Paragraph 48 are denied.

49. On April 8, 2019, Plaintiff and Defendant executed a Stipulation to Toll Limitations Period for Charging Party's Title VII Claim.

**RESPONSE:** Admitted.

**CLAIM FOR RELIEF – Violation of 42 U.S.C. § 2000e-2**

50. Plaintiff incorporates herein the allegations of Paragraphs 1-49 of this amended complaint as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference its responses to the allegations in Paragraphs 1 through 49.

51. Defendant was more qualified for the Vice Provost of Continuing Education position than Mark Bernhard – the individual who was selected for said position.

**RESPONSE:** Denied.

52. Defendant failed to promote Plaintiff to the Vice Provost of Continuing Education position because of Plaintiff's sexual orientation.

**RESPONSE:** Denied.

53. Upon information and belief, Defendant has a history of failing to promote gay males to higher level positions. Twenty-four males at North Carolina State University currently hold high level positions such as Vice Provost, Dean, Provost and Vice Chancellor. None of those twenty-four males are gay.

**RESPONSE:** It is denied that NC State has a history of failing to promote gay males to higher-level positions. Defendant lacks sufficient knowledge and information to admit or deny if twenty-four males at NC State currently hold high level positions such as Vice Provost, Dean, Provost and Vice Chancellor, or if these individuals are gay. In further answer, at NC State, a

19

person's sexual orientation is not taken into consideration during NC State's selection process for positions, nor does NC State collect information about an applicant or an employee's sexual orientation. Except as expressly admitted, the allegations of Paragraph 53 are denied.

54. Defendants failed to conduct a full investigation into Plaintiff's non-selection in order to protect the interview committee member who made the homophobic "plugger" comment during Plaintiff's interview.

**RESPONSE:** It is denied that NC State failed to conduct a full investigation into Plaintiff's non-selection. It is denied that the word "plugger" was intended to have a sexual orientation or homophobic connotation in the context in which it was used. It is further denied that NC State has made any efforts to "protect" the individual whose interview notes contained the word "plugger."

55. At least five of the nine interview committee members were aware that Plaintiff is gay. In addition, Tom Miller, the individual who ultimately made the selection decision, was aware of that fact that Plaintiff is gay.

**RESPONSE:** Defendant is without sufficient knowledge and information to admit or deny that at least five of the nine interview committee members had knowledge of Plaintiff's sexual orientation during the selection process for the Vice Provost Position. It is denied that Dr. Tom Miller had knowledge of Plaintiff's sexual orientation prior to Plaintiff filing his EEOC Charge.

56. Defendant's actions as described herein were malicious and in willful and wanton disregard of Plaintiff's rights.

**RESPONSE:** The allegations of Paragraph 56 are legal conclusions, to which no response is required, but if one is, the allegations of Paragraph 56 are denied.

20

57.     As a result of Defendant's actions, Plaintiff has suffered lost wages, decreased employment benefits, pain and suffering, mental and emotional distress, and other economic losses.

**RESPONSE:**  Denied.

58.     Plaintiff has suffered damages in an amount in excess of $25,000.00 as a result of Defendant's actions.

 **RESPONSE:**  The allegations of Paragraph 58 are legal conclusions, to which no response is required, but if one is, the allegations of Paragraph 58 are denied.

## PRAYER FOR RELIEF

Plaintiff has not alleged facts in this Paragraph of the Amended Complaint that require a response, and the same are therefore denied.

## SECOND DEFENSE

To the extent that Plaintiff has failed to comply with all statutory prerequisites of Title VII, Plaintiff's Title VII claim in this action is barred.

## THIRD DEFENSE

 Plaintiff's Title VII claim is barred, in whole or in part, to the extent it exceeds the scope of or is inconsistent with the charge(s) of discrimination he filed with the EEOC.

## FOURTH DEFENSE

Plaintiff cannot demonstrate any direct evidence of sexual orientation discrimination, nor can he make out a prima facie case of sexual orientation discrimination under Title VII.  Plaintiff's claims fail because the evidence will establish that the selection of the successful candidate was based on objective criteria such as the qualifications and experience related to the Vice Provost position, and not based on sexual orientation.  Plaintiff cannot establish that he was rejected for the promotion as a result of his sexual orientation. The hiring decision for the Vice Provost for

21

Continuing Education position was based on lawful, sound, non-discriminatory reasons, and Plaintiff cannot meet his burden of showing that NC State's legitimate, non-discriminatory employment actions were pretextual. NC State is entitled to judgment on Plaintiff's claims as a matter of law.

## FIFTH DEFENSE

All decisions and actions undertaken by NC State, including but not limited to those regarding Plaintiff's terms, conditions, and privileges of employment, were based upon legitimate and nondiscriminatory reasons and sound business judgment for NC State. NC State is entitled to judgment on Plaintiff's claims as a matter of law.

## SIXTH DEFENSE

At all times, the employment practices of NC State relating to Plaintiff have been conducted in all respects in accordance with applicable state and federal law and in good faith.

## SEVENTH DEFENSE

NC State denies that Plaintiff is entitled to any damages. Furthermore, Plaintiff, with the exercise of reasonable diligence and effort, could have mitigated the damages alleged in the Amended Complaint. Therefore, any such damages were directly and proximately caused by the Plaintiff's failure, neglect and refusal to exercise reasonable diligence to mitigate the damages alleged and Plaintiff is barred from any recovery.

## EIGHTH DEFENSE

To the extent that Plaintiff is seeking punitive damages, he is not entitled to recover punitive damages for his claims from the State of North Carolina including NC State as government entities.

**NINTH DEFENSE**

Plaintiff's Amended Complaint should be dismissed for failure to meet Rule 8 of the Federal Rules of Civil Procedure standards.

**TENTH DEFENSE**

To the extent that Plaintiff has not alleged any ongoing policy or practice of discrimination, Defendant is entitled to Eleventh Amendment immunity related to Plaintiff's request for declaratory judgment.

**ELEVENTH DEFENSE**

NC State reserves the right to plead additional affirmative defenses at a later time if such defenses are appropriate based on information then available.

WHEREFORE, Defendant requests that the Court:

1. Deny all relief requested in the Amended Complaint;

2. Enter judgment in favor of Defendant on all claims;

3. For a trial by jury of all issues of fact herein;

4. Tax all costs of this action and attorneys' fees against Plaintiff; and

5. Grant Defendant all other relief the Court considers appropriate.

Respectfully submitted, this 24th day of August, 2021.

JOSHUA H. STEIN
Attorney General

/s/ Vanessa N. Totten
Vanessa N. Totten
Special Deputy Attorney General
NC State Bar No. 27905
vtotten@ncdoj.gov

/s/ Anne H. Phillips
Anne H. Phillips
Assistant Attorney General
NC State Bar No. 48760
ahphillips@northcarolina.edu

NC Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919.716.6920
Fax: 919.716.6764

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing **DEFENDANT'S ANSWER AND DEFENSES TO AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Plaintiff's counsel, Charles E. Monteith, Jr., charles@monteithlawnc.com.

This the 24th day of August, 2021.

/s/ Vanessa N. Totten
Vanessa N. Totten
Special Deputy Attorney General

24